UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ALBERT C. ALVAREZ,

Plaintiff,

v.

TRANSITAMERICA SERVICES, INC., et al.,

Defendants.

Case No. 5:18-cv-03106-EJD

**ORDER GRANTING IN PART AND DENYING INPART DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 20

## I. INTRODUCTION

Plaintiff Albert C. Alvarez brings this putative class action suit against Defendants Transitamerica Services, Inc. and Herzog Transit Services, Inc. ("Defendants") alleging violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*., and wage and hour violations under California law. Defendants removed the action asserting federal question jurisdiction. Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants now move to dismiss causes of action 5 through 9, 11, and the portion of 10 that is based on Counts 5 through 9 of Plaintiff's First Amended Complaint ("Complaint"). Defendants argue that Plaintiff's claims are preempted by the federal Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq.* (the "RLA").

The Court finds it appropriate to take the motion under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## II. BACKGROUND[1]

Plaintiff worked for Defendants as a non-exempt, hourly employee from approximately April 13, 2015, until he was terminated on or about May 28, 2017. Plaintiff was not provided with meal periods and rest periods that complied with California law when Plaintiff was "required to work double shifts and/or to fill in for other employees." First Amended Complaint ¶¶ 27, 30. "In other words, when Plaintiff and the putative class were dispatched to work another shift, there was no time for them to take their meal periods [and rest periods] and they would have to continue working." *Id*. Plaintiff was also not provided with meal periods and rest periods because of "(1) Defendants' policy of not scheduling each meal period [and rest period] as part of each work shift; (2) chronically understaffing each work shift with not enough workers; (3) imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time; and (4) no formal written meal and rest period policy that encouraged employees to take their meal and rest periods." *Id*. ¶¶ 28, 31. Plaintiff was also not provided with wage statements that accurately reflected (1) all hours worked, including overtime and (2) any and all meal and rest period premium wages. *Id*. ¶¶ 34-36.

The Complaint includes several claims for violations of California state and hour laws, as well as derivative claims for waiting time penalties, violation of the California Private Attorneys General Act, Labor Code §§ 2698 *et seq.* ("PAGA"), and unfair competition. More specifically, causes of action 5 through 11 state claims under California law for: Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226.7, 512 and 1198); Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7 and 1198); Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1 and 1198); Failure to Provide Accurate Written Wage Statements (Lab. Code §§ 226(a)); Failure to Timely Pay All Final Wages (Lab. Code §§ 201, 202 and 203); Unfair Competition (Bus. & Prof. Code §§ 17200 *et seq*.); and Civil Penalties (Labor Code §§2698 *et*

[1] The Background is a summary of the allegations in the First Amended Complaint (Dkt. No. 15) that are relevant to Defendants' motion to dismiss.

*seq*.).

## III. STANDARDS

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Id.* at 556-57. A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

When deciding whether to grant a motion to dismiss, the court must generally accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. *See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (providing the court must "draw all reasonable inferences in favor of the nonmoving party" for a Rule 12(b)(6) motion). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

Also, the court usually does not consider any material beyond the pleadings for a Rule 12(b)(6) analysis. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Exceptions to this rule include material submitted as part of the complaint or relied upon in the complaint, and material subject to judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-69 (9th Cir. 2001).

## IV. DISCUSSION

Congress enacted the RLA "to promote stability in the railroad industry and to provide for prompt and efficient resolution of labor-management disputes arising out of railroad collective

bargaining agreements." *Lewy v. Southern Pacific Transp. Co.*, 799 F.2d 1281, 1289 (9th Cir. 1986). In enacting the RLA, Congress intended to keep certain types of railroad labor disputes out of the courts and instead require use of grievance procedures and arbitration. *Id*. at 1289. To that end, the RLA[2] provides "a mandatory arbitral mechanism to handle disputes 'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions ....'" *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 248 (1994) (quoting 45 U.S.C. § 153).[3]

There are two classes of disputes subject to arbitration under the RLA, "major" disputes and "minor" disputes. *Id*. at 252; *see also* 45 U.S.C. § 151a. Major disputes relate to the formation of collective bargaining agreements ("CBAs") or efforts to secure them. *Id*. at 252 (quoting *Consolidated Rail Corporation (Conrail) v. Railway Labor Executives' Assn.,* 491 U.S. 299, 302 (1989)). In contrast, minor disputes "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Id*. (quoting 15 U.S.C. § 151a). Minor disputes involve the interpretation or application of CBAs in a particular instance. *See id*. at 252-253. Thus, major disputes seek to create contractual rights, whereas minor disputes seek to enforce the contractual rights. *Id*. at 253. Stated differently, "[t]he distinguishing feature of [a minor dispute] in that the dispute may be conclusively resolved by interpreting the existing [CBA]." *Id*. at 256 (quoting *Conrail*, 491 U.S. at 305).

Whether RLA preemption applies depends upon the source of the right asserted by the plaintiff. *See Angeles v. U.S. Airways, Inc.*, No. 12-5860 CRB, 2013 WL 622032, at *5 (N.D. Cal. Feb. 19, 2013) (citing *Espinal v. Northwest Airlines*, 90 F.3d 1452, 1456 (9th Cir. 1996)). "[T]he RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce

---

[2] The RLA "is similar to the National Labor Relations Act ('NLRA') in that it regulates the process of negotiations for the creation and modification of" CBAs. *Air Transp. Ass'n of Am. v. City & County of San Francisco*, 266 F.3d 1064, 1075-76 (9th Cir. 2001). "The RLA is also similar to the Labor Management Relations Act ('LMRA') in that it creates a system for dispute resolution for grievances arising from CBAs." *Id.*

[3] The RLA applies to the airline industry. 42 U.S.C. § 181.

rights that are independent of the CBA." *Hawaiian Airlines*, 512 U.S. at 256.

In *Terminal Railroad Assn. of St. Louis v. Brotherhood of Railroad Trainmen*, 318 U.S. 1, (1943), a union complained to the Illinois Commerce Commission of its employer's failure to provide caboose cars. A Commission order required cabooses on all designated runs within Illinois, whereas the operative CBA required cabooses only on some of the trains. The Supreme Court held that the RLA did not preempt the Commission's order. *Id*. at 6. The Court stated that the RLA, "like the National Labor Relations Act, does not undertake governmental regulation of wages, hours, or working conditions. Instead it seeks to provide a means by which agreement may be reached with respect to them." *Id*. In other words, the RLA "does not fix and does not authorize anyone to fix generally applicable standards for working conditions." *Id*. The federal interest that is fostered by the RLA "is to see that disagreement about conditions does not reach the point of interfering with interstate commerce." *Id*. "The Mediation Board and Adjustment Board act to compose differences that threaten continuity of work, not to remove conditions that threaten the health or safety of workers." *Id*. The Court described the relationship between the RLA and state laws as follows:

> State laws have long regulated a great variety of conditions in transportation and industry, such as sanitary facilities and conditions, safety devices and protections, purity of water supply, fire protection, and innumerable others. Any of these matters might, we suppose, be the subject of a demand by workmen for better protection and upon refusal might be the subject of a labor dispute which would have such effect on interstate commerce that federal agencies might be invoked to deal with some phase of it. But we would hardly be expected to hold that the price of the federal effort to protect the peace and continuity of commerce has been to strike down state sanitary codes, health regulations, factory inspections, and safety provisions for industry and transportation. We suppose employees might consider that state or municipal requirements of fire escapes, fire doors, and fire protection were inadequate and make them the subject of a dispute, at least some phases of which would be of federal concern. But it cannot be that the minimum requirements laid down by state authority are all set aside. We hold that the enactment by Congress of the Railway Labor Act was not a pre-emption of the field of regulating working conditions themselves . . .

*Id*. at 6-7; *see also Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 920 (9th Cir. 2018) ("Congress did not intend to preempt state law claims simply because they in some respect implicate CBA provisions."). Thus, "substantive protections provided by state law, independent of whatever labor agreement might govern, are not pre-empted under the RLA." *Hawaiian Airlines*, 512 U.S. at 257 (citing *Missouri Pacific R. Co. v. Norwood*, 283 U.S. 249 (1931)); *see also Air Transp. Ass'n of Am. v. City & County of San Francisco,* 266 F.3d 1064, 1075-76 (9th Cir. 2001) (ordinance prohibiting city from contracting with companies whose provisions of employee benefits discriminated between employees with spouses and employees with domestic partners not preempted by RLA); *Espinal v. Northwest Airlines*, 90 F.3d 1452 (9th Cir. 1996) (employee's state law discrimination claims not preempted by RLA, but breach of contract claims were);

In the context of wrongful discharge claims, the Court has held that a plaintiff's claim was preempted because the "only source" of the plaintiff's right to not be discharged was the CBA. *See Andrews v. Louisville & Nashville R. Co.*, 406 U.S. 320 (1972). In comparison, the Court has held that a claim for wrongful discharge in violation of public policy or in retaliation for whistle-blowing, was not preempted because the CBA was not the "only source" of plaintiff's right. *Hawaiian Airlines*, 512 U.S. at 258.

Consistent with the Supreme Court cases, the Ninth Circuit has instructed that a state law claim is preempted if it necessarily requires the court to interpret an existing provision of a CBA that "can reasonably be said to be relevant to the resolution of the dispute." *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 693 (9th Cir. 2001) (LMRA did not preempt claims for invasion of privacy and emotional distress based on use of two-way mirrors in terminal restrooms, ostensibly to detect and prevent drug use, because CBA provisions permitting surveillance clearly applied only to circumstances involving charges of theft or dishonesty). In contrast, "[a] claim that requires only reference to a CBA, but no interpretation, is not preempted." *Id.*; State law claims that are "inextricably intertwined" with the interpretation of a CBA, however, are preempted. *Edelman v. Western Airlines, Inc.*, 892 F.2d 839, 845 (9th Cir. 1989)

(state law claims for wrongful infliction of emotional distress and defamation preempted by RLA because resolution of claims required analysis of CBA to decide whether discharge was justified).

In the present case, Defendants contend that resolution of Plaintiff's claims would require both application and interpretation of the two CBAs governing Plaintiff's employment.[4] Defendants reason that the two CBAs control Plaintiff's hours of work, rates of pay, overtime rates, breaks owed, deductions allowed, wage statements, the manner and means of payment, and all of the other significant terms and conditions of Plaintiff's employment. As such, Defendants contend that the court would need to consult and interpret the CBAs to determine Defendants' liability, if any, and calculated damages. Plaintiff responds that his claims are not preempted because they do not require any analysis of a CBA. Plaintiff's Opposition, p. 4.[5]

The court discusses each claim separately below to determine whether resolution of the claim requires interpretation or application of, and not merely reference to, the CBAs.

**A. Meal Period Claim**

Plaintiff's fifth cause of action is based upon allegations that he "was not subject to a valid on-duty meal period agreement" and that Defendants "maintained a policy or practice of not providing" Plaintiff with uninterrupted, duty-free meal periods for at least thirty minutes for every five (5) hour work period. Complaint ¶¶ 107-108. Plaintiff also alleges that Defendants maintained a policy or practice of failing to pay premium wages when he worked five (5) hours without clocking out for any meal period. *Id.* ¶ 109. Further, Plaintiff alleges that Defendants maintained "a policy or practice of not providing" Plaintiff with a second meal period when he worked shifts of ten or more hours and failed to pay him premium wages. *Id.* ¶ 110. Plaintiff alleges that "Defendants['] written policies do not provide that employees must take their first meal period before the end of the fifth hour of work, that they are entitled to a second meal period

---

[4] The CBAs are attached as Exhibits A and B to the Declaration of Bret George.

[5] Plaintiff also contends that he is not "covered by any CBA implicating" the RLA. *Id.* However, Plaintiff never actually denies that his employment was governed by the CBAs relied upon by Defendants. Nor does Plaintiff offer any facts or legal argument to support his assertion.



United States District Court
Northern District of California

if they work a shift of over ten hours, or that the second meal period must commence before the end of the tenth hour of work, unless waived." *Id*.

To the extent the fifth cause of action challenges the validity of Plaintiff's "agreement" and "written policies" with Defendants regarding meal periods, the claim requires interpretation of the CBAs. The only plausible sources of any meal agreement or policies between the parties are the CBAs referenced by Defendants. The validity of the meal agreement and policies cannot be determined without interpretation of the CBAs. *See e.g.*, *Pa. Fed'n. of Broth. of Maintenance of Way Employees v. Nat'l. R.R. Passenger Corp. (Amtrak)*, 989 F.2d 112, 115 (3d Cir. 1993) (plaintiff's claim for state law minimum wages for travel time preempted by the RLA because resolution of claim required interpretation of the CBA to determine the duties of an employee, what constituted normal working hours, and when an employee was required to be on the premises, to be on duty, or to be at a prescribed work place). Therefore, the fifth cause of action is preempted and subject to dismissal insofar as it challenges the validity of Plaintiff's agreement and "written policies" with Defendants regarding meal periods.

Plaintiff's Complaint and opposition to Defendants' motion raise another basis for the meal period claim, namely that Defendants required employees to work double shifts and/or to fill in for other employees without providing meal breaks. *See* Complaint ¶ 27; Plaintiff's Opposition at 2. To the extent Plaintiff intends to pursue a meal period claim based on this alternative theory, Defendants have not established that the claim would be preempted. Defendants have not pointed to any particular term or provision in the CBAs that must be interpreted or applied in order to determine Defendants' meal period obligations when an employee is working a double shift or filling in for another employee. That the CBAs' provisions regarding meal periods may need to be consulted for information will not result in preemption. *See Firestone v. Southern California Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 1999) ("When the meaning of particular contract terms is not disputed, the fact that a collective bargaining agreement must be consulted for information will not result in § 301 preemption.").

United States District Court
Northern District of California

Plaintiff's fifth cause of action is dismissed with leave to amend.

**B. Rest Periods Claim**

In the sixth cause of action, Plaintiff alleges that Defendants "maintained a policy or practice of not providing" Plaintiff with a rest period of at least ten minutes for each four hour work period, or major fraction thereof. Complaint ¶ 121. More specifically, Plaintiff alleges that "Defendants['] written policies do not provide that employees may take a rest period for each four hours worked, or major fraction thereof, and that rest periods should be taken in the middle of each work period insofar as practicable." *Id.* ¶ 123.

To the extent the sixth cause of action challenges the validity of "written policies," the claim requires interpretation of Defendants' written policies, namely the CBAs. Accordingly, the sixth cause of action is preempted insofar as it challenges "written policies." *See e.g., Pa. Fed'n. of BMWE v. Nat'l. R.R. Passenger Corp. (AMTRAK)*, 989 F.2d at 115.

Plaintiff's rest period claim is also based upon Defendants' "policy and practice of requiring Plaintiff and class members to work double shifts that did not permit them to take their rest period." Complaint ¶ 30; Plaintiff's Opposition at p. 3. To the extent Plaintiff intends to pursue a rest period claim based on this alternative theory, Defendants have not established that the claim would be preempted. Defendants have not pointed to any term or provision in the CBAs that must be interpreted or applied in order to determine Defendants' rest period obligations when an employee is working a double shift or filling in for another employee. That the CBAs' provisions regarding rest periods may need to be consulted for information will not result in preemption. *See Firestone v. Southern California Gas Co.*, 219 F.3d at 1065.

The sixth cause of action is dismissed with leave to amend.

**C. Failure to Pay Hourly and Overtime Wages**

In the seventh cause of action, Plaintiff alleges that Defendants "have applied centrally devised policies and practices" with respect to working conditions and compensation arrangements. Complaint ¶ 139. Plaintiff alleges that Defendants failed to pay all earned wages

"because Defendants directed, permitted or otherwise encouraged Plaintiff . . . to perform off-the-clock work." *Id.* ¶¶ 140-141.

Defendants contend that the seventh cause of action is preempted because "the CBAs specifically define the hours of work, compensation to be paid, when overtime is triggered, and at what rate overtime should be paid." Reply, p. 10. Further, Defendants contend that the CBAs contain multiple, complex provisions relating to when overtime can be worked and at what rates overtime will be paid. *Id*.

At the pleading stage, Defendants' argument is unpersuasive because Defendants have not identified any particular term within the CBAs that will require application or interpretation to decide whether Plaintiff was required to work off-the-clock. Instead, Defendants cite to provisions in the CBAs that may affect calculation of damages in the event Plaintiff prevails on the merits of the off-the-clock claim. The potential need to consult the CBAs for damages computation, however, does not mean the claim is preempted. *Angeles*, 2013 WL 622032 at *6 (citing *Livadas v. Bradshaw*, 512 U.S. 107 (1994)); *cf Fitz-Gerald v. SkyWest, Inc.*, 155 Cal. App. 4th 411, 421 (2007) (claims preempted because damages could not be calculated without reference to and application of the CBA's definition of "flight pay" and "block time pay"); and *Adames v. Executive Airlines, Inc.*, 258 F.3d 7 (1st Cir. 2001) (claims under Puerto Rico laws dealing with wages, overtime pay, maternity benefits, meal periods, days off, vacation and other matters were preempted because resolution required interpretation of several CBA terms, including but not limited to "guarantee," "flight time," "on-duty" time, base and overtime pay, "reserve time," "Company policy" and "applicable law," as well as consideration of industry practices).

**D. Derivative Claims Written**

Plaintiff asserts several claims that are derivative of his substantive claims. The preemption analysis set forth above for the fifth through seventh causes of action applies to the derivative claims. *See e.g. Fitz-Gerald*, 155 Cal. App. 4th at 422; *Blackwell v. SkyWest Airlines, Inc.*, No. 06-307 DMS (AJB), 2008 WL 5103195 (S.D. Cal. Dec. 3, 2008).

## V. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED with leave to amend as to the fifth and sixth causes of action, and the portions of the eighth, ninth, tenth and eleventh causes of action that are based on the fifth and sixth causes of action, and DENIED as to the seventh cause of action and the portions of the eighth, ninth, tenth and eleventh causes of action that are based on the seventh cause of action.

**IT IS SO ORDERED.**

Dated: January 9, 2019

EDWARD J. DAVILA
United States District Judge